**IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE**

JERROLD WILLIAMS and )
LISA WILLIAMS, )
)
    **Plaintiffs,** )
)
v. )
)   Civil Action No.: **20CH2231**
CAMM CARE, LLC d/b/a PATRIOT )   **JURY DEMANDED**
HOMECARE, CHRISTOPHER )
CALEB MULLINS, and BARBARA )
MEGHAN MULLINS, )
)
    **Defendants.** )

**FILED**
4:30 O'CLOCK P.M
HAROLD P. COUSINS, JR.
Clerk & Master
MAY 20 2020

## COMPLAINT

Come now, the Plaintiffs, Jerrold Williams ("Mr. Williams") and Lisa Williams ("Mrs. Williams") ("Plaintiffs"), and for their cause of action against the Defendants, Camm Care, LLC d/b/a Patriot Homecare ("Patriot"), Christopher Caleb Mullins ("Mr. Mullins"), and Barbara Meghan Mullins ("Mrs. Mullins"), state as follows:

### I.    PARTIES

1.    Mr. Williams is a married individual who resides in Anderson County, Tennessee. Mr. Williams was formerly Patriot's Chief Operations Officer.

2.    Mrs. Williams is a married individual who resides in Anderson County, Tennessee. Mrs. Williams was formerly employed by Patriot as a part-time personal care attendant.

3.    Patriot is a Tennessee corporation providing home care and personal care services doing business in and around Anderson County, Tennessee. Among other federal and state programs, Patriot is approved by the U.S. Department of Labor ("Department of Labor") as a provider of personal care services under the Energy Employees Occupational Illness

Compensation Program ("EEOICPA"), 42 U.S.C. §§ 7384 through 73895s-16. Patriot can be served with process through its registered agent, Christopher Caleb Mullins, 116 Rockbridge Greens Boulevard, Oak Ridge, Tennessee 37830.

4. Mr. Mullins is a married individual who resides in Anderson County, Tennessee. He is Patriot's President and sole-owner. Mr. Mullins can be served with process at 116 Rockbridge Greens Boulevard, Oak Ridge, Tennessee 37830.

5. Mrs. Mullins is a married individual who resides in Anderson County, Tennessee. She is Patriot's Chief Administrative Officer. Mrs. Mullins can be served with process at 116 Rockbridge Greens Boulevard, Oak Ridge, Tennessee 37830.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this cause of action pursuant to Tenn. Code Ann. §§ 16-11-101 through 103.

7. While Patriot has asserted in the past that the Plaintiffs were parties to a "Confidentiality, Non-Disclosure and Non-Solicitation, and [sic] Non-Competition [sic] Agreement" ("Confidentiality Agreement"), copies of which are attached hereto as <u>Collective Exhibit A</u>, which contained a venue selection provision for Davidson County, Mr. Mullins recently testified under oath in a deposition: (1) These agreements did or should have contained a venue selection provision allowing all parties to file suit in *either* Anderson or Davidson County; and (2) In any event, there was no factual basis to enforce a venue selection provision for Davidson County against the Plaintiffs, both of whom are residents of Anderson County, related to matters occurring in and around Anderson County, where all pertinent witnesses, documents, and information are located.

8.     As a result, to the extent, if at all, the Confidentiality Agreements are enforceable against the Plaintiffs, particularly Mrs. Williams, who was employed part-time as a low skilled personal care attendant, the venue provision is not reasonable in light of all the surrounding circumstances attending its origin and application. *See Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 630 (Tenn. Ct. App. 2017); *Dyersburg Machine Works, Inc. v. Rentenbach Engineering Co.*, 650 S.W.2d 378, 380 (Tenn. 1983). Furthermore, the Plaintiffs have requested declaratory judgment relief from this Court with regard to the Confidentiality Agreements, generally, and the venue selection provision, specifically. *See infra.*

9.     Mr. Mullins also testified that Mr. Williams and Patriot memorialized their employment relationship, not through the Confidentiality Agreement, but in a separate formal, written contract drafted by Mr. Williams. On information and belief, Patriot is in possession of this employment contract, which has been signed by both parties, and it does not contain a venue selection provision for Davidson County, nor does it contain an integration clause. Moreover, although this written contract had a duration of one year, the parties orally agreed for Mr. Williams to be employed by Patriot the next year. The terms of this oral employment agreement were substantially the same as the written contract, with exception that Mr. Williams was to be paid additional bonuses commensurate with Patriot's business growing. The oral employment agreement was also limited to one year in duration.

10.     In any event, Mr. Mullins and Mrs. Mullins are not parties to any such Confidentiality Agreements or employment contracts. Moreover, at all times material hereto, the factual allegations contained herein describe events that either occurred in Anderson County and/or caused the Plaintiffs to incur damage or injury in Anderson County.

## III.  FACTUAL BACKGROUND

11.  On January 28, 2019, Mr. Williams began working as Patriot's COO.  While he signed a number of documents during the initial onramp process with Patriot, he specifically does not recall signing the Confidentiality Agreement.  Mr. Williams requested copies of everything he signed at the time, and Patriot failed to provide a copy of the Confidentiality Agreement.  In addition, Mr. Williams was informed that he could review his employment documents at any time.  Mr. Williams was never allowed to review the Confidentiality Agreement, if any such agreement existed.  Furthermore, at the time of his resignation based solely upon Patriot's illegal charting/billing practices, Patriot failed to provide him with a copy of the Confidentiality Agreement.

12.  Mrs. Mullins eventually sent Mr. Williams three photographs of the Confidentiality Agreement by text message after he resigned, but she refused to send a complete version of the document, referring Mr. Williams to Patriot's legal counsel.  Mr. Williams did not receive a complete version until Patriot sued him and Mrs. Williams in a lawsuit styled *Camm Care, LLC a Tennessee limited liability company doing business as Patriot Homecare v. Jerrold Williams et ux. Lisa T. Williams*, Chancery Court for Davidson County, Tennessee, Civil Action No. 20-0340-III ("*Patriot I*").  *Patriot I* was abruptly non-suited without prejudice after the Plaintiffs' counsel in this case took four depositions, including Mr. Mullins' deposition.

13.  Throughout the first few months of 2019, Mr. Williams was provided with few responsibilities by Patriot's management.  In May, he began to organize a move to the main office location in Oak Ridge.  Mr. Williams created a marketing campaign for Patriot from scratch including, among other things, designing marketing materials and driving them around to various locations in Oak Ridge that potential Patriot patients would gather or visit.  Patriot hired

Josh Picquet, RN ("Mr. Picquet"), as an Administrator, and Mr. Williams and Mr. Picquet became the point persons on hiring positions and advertising for Patriot.

14.    From June through October, Mr. Picquet and Mr. Williams often discussed the lack of communication with Mr. and Mrs. Mullins and the lack of training provided to them and other staff.   Mr. Picquet was fired in October as a result of his continued effort to make sure Patriot was in compliance with various charting/billing practices.   Patriot employee Summer Coker Jones took maternity leave in June.   As a result, Mr. Williams was then assigned responsibility for Ms. Jones' tasks, which included reviewing and processing notes every Monday of the work week for Patriot.   Mr. Williams cleaned up patient files (many were out of compliance) and developed his own system for reviewing, tracking, and documenting the notes that were being submitted by Patriot's employees.

15.    During this period, Mr. Williams began to notice alarming trends when it came to charting/billing.   For example, he noted what appeared to be excessive hours logged by Patriot's caregivers, given the number of employees (35-40) that it had working 7 days a week.   Mr. Williams also became alarmed when notes would be sent in with mistakes (dates, names, initials, etc.) and those notes seemed to be "corrected" in-house by Patriot employee Latisha ("Tish") Roberts ("Ms. Roberts"), who is Mrs. Mullins' cousin.   Mr. Williams asked Patriot's management multiple times if it was legal for Ms. Roberts to make those corrections, and he was informed it was, in fact, legal.   Mr. Williams has subsequently learned that this was not correct and likely illegal.

16.    In addition, Mr. Williams brought it to Mr. Mullins' attention that Mrs. Mullins was charting 20 hours every weekend at one particular patient's home.   When he asked Mr. Mullins if that was a legitimate billing practice, Mr. Mullins' reply was to the effect of "I don't

know what she does on the weekends." However, the following weekend, and going forward, those hours were not charted again by Mrs. Mullins. Similarly troubling events occurred in and around September, 2019, when Mr. Williams discovered that his personnel file contained numerous completed training certificates, compliance forms, etc., that he knew were not completed by him. Once again, no Confidentiality Agreement was contained in his personnel file.

17. At approximately the same time, Mrs. Williams came on to work for Patriot part-time as a personal care attendant. She was hired for the sole purpose of taking care of a family friend. Mrs. Williams received no training during her employment with Patriot. Mrs. Mullins informed Mr. Williams that his wife could chart any hours related to working for the patient, whether she was with him or not (i.e. grocery store runs, cooking time, etc.). Although he did not know it at the time, Mr. Williams later learned that this was not correct and likely illegal. Mr. Williams was also ordered by Patriot's management to complete Mrs. Williams' notes. Although he did not know it at the time, Mr. Williams later learned that this was not appropriate and likely illegal.

18. Mr. Mullins informed Mr. Williams that his wife needed to be "charting as many hours as possible because the patient authorization period was coming up and if he didn't use the hours he would lose them" or words to this effect. Mr. Williams disregarded that request and continued to chart the hours that Mrs. Williams actually spent working with the patient. Mrs. Williams worked for a period of five weeks until the patient's significant other returned home from the East Coast. She then left Patriot and never worked for it again.

19. In the late fall of 2019, Mr. Williams approached Mr. Mullins and told him that Mr. Williams had a lot of concerns with many Patriot caregivers and the hours they were

charting/billing. Specifically, Mr. Williams asked Mr. Mullins about a nurse that was working 5 P.M. to 10 P.M., 7 days a week, every week without any interruption whatsoever. He stated that it was impossible for a patient and/or employee's life to be that structured without any variation. Mr. Mullins was indignant. He told Mr. Williams that he was "brought in to help me run the company from a business side, not figure out things we are doing wrong" or words to that effect.

20. Based upon the foregoing, and specifically this conversation with Mr. Mullins, Patriot's management now understood that Mr. Williams was not going to ignore their charting/billing practices or participate in them. They began to exclude Mr. Williams from regular management meetings he previously attended as COO. Mr. Williams' decision-making authority was substantially reduced.

21. In January, 2020, the office personnel, including Mr. Williams, were asked to go to lunch with Mr. and Mrs. Mullins. At that lunch, they were informed that investigators from the Department of Labor had been knocking on doors and interviewing caregivers about their hours of personal care. In the coming weeks, those patients had several changes in their caregivers' hours or their caregiver altogether. Mr. Williams later asked Mr. Mullins for details regarding the investigation, and he attempted to downplay its seriousness, claiming the investigation was about a previous matter that had already been resolved. Mr. Mullins claimed the present investigation was just a "follow-up." As Mr. Williams later learned, this was not correct. Indeed, Patriot was and is under investigation by multiple federal agencies related to its charting/billing practices, including the Department of Labor and the U.S. Attorney's Office. Mr. Mullins belatedly admitted to the existence of the ongoing federal investigation under oath during his deposition after many repeated, pointed denials.

22.     Mr. Williams was then demoted by Patriot without notice.  In early February, 2020, Mr. Williams arrived at his desk to find a new box of business cards, which reflected the demotion from Chief Operating Officer to Executive Chief of Staff/Director of Business Operations.  The demotion was confirmation of Mr. Mullins' earlier conversation, wherein he informed Mr. Williams that he was there to market Patriot, not govern its business operations or charting/billing practices.  In addition, another investigator with the Department of Labor visited the residence of a patient.  Upon notice of the same, Mr. and Mrs. Mullins rushed off to the patient's home to discuss the matter.  Again, this was downplayed by Patriot management.  Of interest, the charted hours for that patient went down significantly the following week.

23.     It was then brought to Mr. Williams' attention by a caregiver that she had been ordered to chart hours on weekends the caregiver had not been working.  When Mr. Williams asked her to explain, the caregiver told him she was ordered to chart the additional false hours by Jonathan Soldner ("Mr. Soldner").  Mr. Soldner is Patriot's Senior Vice-President, Procurement and Customer Relations.  The caregiver also admitted to Mr. Williams that Mr. Soldner paid her $200.00 in cash when Patriot acquired the patient as a "thank you."  Mr. Williams now knows that such a payment was not appropriate and likely illegal.

24.     Based solely upon Patriot's billing/charting practices, which were the subject of an ongoing federal investigation and appeared to be illegal, Mr. Williams had no choice but to resign from his employment with Patriot on March 6, 2020.  He subsequently participated as a cooperating witness in the federal investigation and, upon their request, provided the investigators with information and documentation confirming Patriot's illegal charting/billing practices.  Shortly thereafter, Patriot filed *Patriot I* seeking, among other things, injunctive relief, substantial monetary damages, and attorney's fees from Mr. and Mrs. Williams in Davidson

County, Tennessee. In addition to filing suit, Patriot obtained injunctive relief against the Plaintiffs, requiring them to file a Motion to Dismiss, attending a status hearing/conference, and forcing the Plaintiffs to develop proof in preparation for a Temporary Injunction hearing through multiple depositions. Patriot also propounded written discovery, sought to depose the Plaintiffs, and caused to issue multiple subpoenas.

25.　On or about April 9, 2020, Mr. Williams received a notification on his smart telephone indicating someone was attempting to access his Yahoo email account and smart phone without his authorization. Upon further investigation and discovery, Mr. Williams identified a specific Comcast IP address related to this attempt. Mr. Mullins testified in his deposition that Patriot's internet provider was Comcast and that he alone conducted Patriot's technical support including, setting up and accessing computers and email. On information and belief, Mr. Mullins and/or Mrs. Mullins attempted to or successfully accessed Mr. Williams' Yahoo email and smart phone for the express purpose of obtaining information against him for use in *Patriot I*.

26.　Mr. and Mrs. Williams retained Nashville-based counsel to represent them in *Patriot I* at significant expense. Among other things, the Plaintiffs then filed a Motion to Dismiss, arguing that Patriot attempted to turn its defense of a brewing health care fraud investigation actively pursued by multiple federal agencies into the ultimate offense by suing the Plaintiffs in this case seeking, in particular, to silence Mr. Williams. After taking the preliminary depositions of Mr. Soldner, Ms. Roberts, Lisa Hall, and Mr. Mullins, Patriot abruptly non-suited that case without prejudice.

# IV.   CAUSES OF ACTION

## Count 1 – Breach of Contract (Patriot)

27.    The Plaintiffs restate the allegations contained within Paragraphs 1-26 of this Complaint and incorporate those allegations herein by reference.

28.    The verbal employment agreement for the time frame of one year (from January 28, 2020, through January 28, 2021) was a valid contract between Mr. Williams and Patriot. Pursuant to the agreement, Patriot promised Mr. Williams that it would pay him the salary and benefits reflected in the parties' previous written agreement for working as Patriot's COO and additional bonuses commensurate with Patriot's business growing.   Mr. Williams upheld his obligations under the verbal employment agreement, but Patriot failed to do the same.   Among other things, Patriot demoted Mr. Williams from COO to Executive Chief of Staff/Director of Business Operations without notice and failed to pay him any bonuses despite his efforts which grew Patriot's business substantially. In any event, Mr. Williams was ultimately forced to resign from Patriot based solely upon Patriot's illegal charting/billing practices.

29.    Accordingly, Patriot has breached the verbal employment agreement, and Mr. Williams has suffered damages as a result.

## Count 2 – Declaratory Judgment (Patriot)

30.    The Plaintiffs restate the allegations contained within Paragraphs 1-29 of this Complaint and incorporate those allegations herein by reference.

31.    The Plaintiffs request this Court's assistance in determining the parties' rights and obligations, if any, with regard to the Confidentiality Agreement pursuant to the Tennessee Declaratory Judgments Act, Tenn. Code Ann. §§ 29-14-101, et seq.   Specifically, the Plaintiffs dispute the existence of any Confidentiality Agreement, duly signed at or near the time of their

employment with Patriot, and/or the legal validity or enforceability thereof if any such agreement is found to exist.

32.     With regard to Mr. Williams, if any such agreement is found to exist, among other reasons for the Court to find it to be invalid, is lack of consideration, excessive duration of its non-compete provision (five years), and legality of the agreement as a result of Patriot's illegal charting/billing practices, which have resulted in an ongoing federal investigation by multiple agencies.  With regard to Mrs. Williams, in addition to the foregoing, Patriot does not have a protectable business interest in Mrs. Williams, who was employed part-time as a low skilled personal care attendant, for any such agreement to be legally enforceable.  *Hinson v. O'Rourke*, 2015 WL 5033908, at *3 (Tenn. Ct. App. Aug. 25, 2015) (citing *Corbin v. Tom Lange Co.*, 2003 WL 22843167, at *6 (Tenn. Ct. App. Dec. 1, 2003)).

33.     Specifically with regard to the venue provision of the Confidentiality Agreements, Patriot's President, Mr. Mullins, recently testified under oath in a deposition: (1) These agreements did or should have contained a venue selection provision allowing all parties to file suit in *either* Anderson or Davidson County; and (2) In any event, there was no factual basis to enforce a venue selection provision for Davidson County against the Plaintiffs, both of whom are residents of Anderson County, related to matters occurring in and around Anderson County, where all pertinent witnesses, documents, and information are located.  As a result, the Court should find, assuming the Confidentiality Agreements are otherwise enforceable against both Plaintiffs, the venue provision is not reasonable in light of all the surrounding circumstances attending its origin and application.  *See Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 630 (Tenn. Ct. App. 2017); *Dyersburg Machine Works, Inc. v. Rentenbach Engineering Co.*, 650 S.W.2d 378, 380 (Tenn. 1983).

## Count 3 – Abuse of Process (Patriot and Mr. Mullins)

34.     The Plaintiffs restate the allegations contained within Paragraphs 1-33 of this Complaint and incorporate those allegations herein by reference.

35.     Patriot and Mr. Mullins committed abuse of process against the Plaintiffs in that they possessed an ulterior motive when using processes of a Tennessee court, specifically filing the Complaint in *Patriot I*, and developing the litigation to include, but not limited to, obtaining injunctive relief against the Plaintiffs, requiring them to file a Motion to Dismiss, attending a status hearing/conference, and forcing the Plaintiffs to develop proof in preparation for a Temporary Injunction hearing through multiple depositions, in a manner that is not proper in the regular prosecution of a charge(s).  Following these actions by the Plaintiffs, Patriot abruptly filed a non-suit of *Patriot I* without prejudice after four depositions, including the deposition of Mr. Mullins.

36.     Patriot and Mr. Mullins used the processes of a Tennessee court in *Patriot I* to accomplish an end which was without the regular purview of the processes, and/or which compelled or attempted to compel the Plaintiffs to do some collateral thing they could not legally and regularly be compelled to do.

37.     Patriot and Mr. Mullins improperly used the processes of a Tennessee court in *Patriot I* as a weapon against the Plaintiffs.  They sought to silence, in particular, Mr. Williams from participating as a cooperating witness in the ongoing federal investigation into Patriot's illegal charting/billing practices.

38.     The Plaintiffs have suffered, and will continue to suffer, significant injury as a result of the conduct of Patriot and Mr. Mullins for which they are liable in an amount to be proven at trial.

## Count 4 – Computer Fraud and Abuse Act of 1986
### (Mr. Mullins and/or Mrs. Mullins)

39.     The Plaintiffs restate the allegations contained within Paragraphs 1-38 of this Complaint and incorporate those allegations herein by reference.

40.     The Computer Fraud and Abuse Act of 1986, as amended, 18 U.S.C. §§ 1030, *et seq.*, prohibits unauthorized access or attempted access of smart phones, such as Mr. Williams' smart phone. The Computer Fraud and Abuse Act, specifically 18 U.S.C. §§ 1030(g), provides for a civil action by any person who has suffered damage or loss as a result of a violation of the federal law. As provided herein, Mr. Mullins and/or Mrs. Mullins violated the Computer Fraud and Abuse Act of 1986, as amended, and caused Mr. Williams to suffer damages as a result.

## Count 5 – Electronic Communications Privacy Act of 1986
### (Mr. Mullins and/or Mrs. Mullins)

41.     The Plaintiffs restate the allegations contained within Paragraphs 1-40 of this Complaint and incorporate those allegations herein by reference.

42.     The Electronic Communications Privacy Act, as amended, 18 U.S.C §§ 2510, prohibits unauthorized access or attempted access to email accounts, such as Mr. Williams' Yahoo email account. The Electronic Communications Privacy Act, as amended, 18 U.S.C §§ 2520, provides for a civil action by any person who has suffered damage or loss as a result of a violation of the federal law. As provided herein, Mr. Mullins and/or Mrs. Mullins violated the Electronic Communications Privacy Act, as amended, 18 U.S.C §§ 2510.

## Count 6 – Tennessee Personal and Commercial Computer Act of 2003
### (Mr. Mullins and/or Mrs. Mullins)

43.     The Plaintiffs restate the allegations contained within Paragraphs 1-42 of this Complaint and incorporate those allegations herein by reference.

44. The Tennessee Personal and Commercial Computer Act of 2003, as amended, Tenn. Code Ann. §§ 39-14-601, *et seq.*, prohibits unauthorized access or attempted access of email accounts, such as Mr. Williams' Yahoo email account, and his smart phone. The Tennessee Personal and Commercial Computer Act, specifically Tenn. Code Ann. § 39-14-604(a), provides for a civil action by any person whose property or person is injured as a result of a violation of the state law. As provided herein, Mr. Mullins and/or Mrs. Mullins violated the Tennessee Personal and Commercial Computer Act of 2003, as amended, and caused Mr. Williams to suffer damages as a result.

## V. **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray for the following:

A. Process be issued to the Defendants and this Complaint be served upon them requiring them to respond;

B. A jury trial of twelve (12) individuals assembled to determine all issues triable by a jury;

C. A Declaratory Judgment consistent with the Plaintiffs' relief requested herein;

D. Judgment be entered against the Defendants, jointly and severally, in the amount of $1,000,000.00 for compensatory damages and $300,000.00 in punitive damages;

E. Attorney's fees and costs related to prosecuting this cause against the Defendants;

F. Pre- and post-judgment interest; and,

G. For such other, further, and general relief as to which the Plaintiffs may be entitled upon a hearing of this cause.

Respectfully submitted,


s/ Ben M. Rose
Ben M. Rose (#21254)
RoseFirm, PLLC
Post Office Box 1108
Brentwood, Tennessee 37024
615-942-8295
ben@bmrfirm.com

Attorney for the Plaintiffs,
Jerrold Williams and Lisa Williams

**COLLECTIVE EXHIBIT A**

## CONFIDENTIALITY, NON-DISCLOSURE AND NON-SOLICITATION AND NONCOMPETITION AGREEMENT

THIS CONFIDENTIALITY, NON-DISCLOSURE AND NON-SOLICITATION AND NONCOMPETITION AGREEMENT (the "Agreement") is made and entered into as of the ~28~ day of _January_, 20_19_, by and between _____ ("Employee") and CAMM Care, LLC., a Tennessee limited liability company doing business as Patriot Homecare (" Patriot").

### RECITALS

A.    Patriot is engaged in the in home caregiving business (the "Business").

B.    Employee is an at-will employee of PATRIOT and shall perform such duties as PATRIOT may designate from time to time.

### AGREEMENT

The parties, intending to be legally bound, agree as follows:

1.    <u>Payment</u>. Employee acknowledges that Employee's at-will employment with PATRIOT is full and sufficient consideration for Employee's execution of this Agreement.

2.    <u>Employment at Will</u>.   PATRIOT employs Employee as an at-will employee to perform such duties as PATRIOT may from time to time designate. Either PATRIOT or the Employee may terminate the at-will employment relationship upon notice to the other party. As a condition of Employee's good standing and continued employment with PATRIOT, PATRIOT requires the Employee to execute this Agreement. Employee, in consideration for that at-will employment and good standing with PATRIOT, executes this Agreement for the purposes contained in this Agreement.

3.    <u>Confidentiality and Non-Disclosure</u>. Employee acknowledges that during the course of employment, Employee will have access to and become familiar with any and all information concerning the business and affairs of PATRIOT and its clients (collectively, the "Confidential Information").

Employee acknowledges that PATRIOT's Confidential Information is a valuable asset that gives it an advantage over its competitors. Employee further acknowledges that PATRIOT has invested substantial time, effort and expense in developing its Confidential Information, and it would be unfair for Employee to misappropriate such information for Employee's own use or the use of another.

Employee hereby agrees not to disclose to any unauthorized persons or entities or use for Employee's account or for the benefit of any third party any Confidential Information, whether or not such information is embodied in writing or other physical form or is retained in the memory of Employee without PATRIOT's written consent. In the event of Employee's termination of employment or at such other time as PATRIOT may request, Employee agrees to deliver to PATRIOT, all documents, memoranda, notes, plans, records, reports and other documentation, models, components, devices or computer software, whether embodied in a disk or in other form( and all copies of the foregoing) that contain Confidential Information and any other Confidential Information that Employee may then possess or have under Employee's control.

4.    <u>Non-Solicitation and Non-Disparagement</u>.



Employee acknowledges that by virtue of his or her employment with PATRIOT, he or she will obtain Confidential Information and an opportunity to develop personal and business relationships with PATRIOT's clients. Employee further acknowledges that all business developed by Employee and all business opportunities that become known to Employee as a consequence of his or her employment are the property of PATRIOT and not of Employee. These covenants are made to induce PATRIOT to hire, train, retain or promote Employee and to grant Employee access to PATRIOT's Confidential Information. Employee acknowledges the sufficiency of the consideration received for entering into these covenants and represents that complying with them will not impose an undue hardship on Employee nor prevent Employee from making a living.

Accordingly, Employee agrees that:

(a)     For a period of five (5) years after the termination of Employee's employment with PATRIOT (the "Termination"):

(i)     Employee agrees not to, directly or indirectly, (A) induce or attempt to induce any employee or independent contractor of PATRIOT to leave that employee's employment or independent contractor status; (B) in any way interfere with the relationship between employee or independent contractor and PATRIOT; (C) employ or otherwise engage as an employee, independent contractor or otherwise any such employee or independent contractor of PATRIOT; or (D) induce or attempt to induce any client to cease doing business with PATRIOT or in any way interfere with the relationship between any such client and PATRIOT.

(ii)     Employee agrees that Employee will not, directly or indirectly, solicit the business of any person or entity known to Employee to be a client of PATRIOT, whether or not such Employee has or had personal contact with such person or entity, with respect to the services PATRIOT provides that client.

(iv) Employee acknowledges that Patriot's business is highly competitive and subject to specialized knowledge and agrees that Employee will not within a fifty mile radius of any Patriot office, directly or indirectly, own, operate, contract or consult with or be employed by or work in any manner for any person or entity in the business of providing personal or health care service in the home.

(b)     In the event of a breach by Employee of any covenant set forth in Section 4(a) of this Agreement, the term of such covenant will be extended by the period of the duration of such breach.

(c)     Employee agrees that Employee will not at any time make any statements that disparage PATRIOT, or any member, shareholder, director, officer, employee or agent of PATRIOT or that damage the reputation and goodwill of PATRIOT.

5.     Remedies. In the event of an actual or threatened breach by the Employee of the provisions of this Agreement, PATRIOT shall be entitled to injunctions (both preliminary and temporary) and restraining orders enforcing and restraining such breach or violation or such threatened or intended breach or violation in addition to such other and further legal and equitable remedies as may be available to it. The parties acknowledge that money damages alone would be inadequate to compensate PATRIOT and would

be an inadequate remedy for a breach by Employee of the terms of this Agreement. The rights and remedies of PATRIOT under this Agreement are cumulative and not alternative.

6.  **Return of Company Property.** At the request of PATRIOT (or, without any request, upon termination of employment with PATRIOT for any reason), Employee will immediately deliver to PATRIOT all PATRIOT property that is then in Employee's possession, custody or control.

7.  **Indemnification.** Employee hereby indemnifies PATRIOT and holds it harmless against any and all claims and liabilities asserted against it which arise in connection with (i) Employee's breach of this Agreement and (ii) Employee's performance of Employee's duties and responsibilities while acting in Employee's capacity as an employee of PATRIOT, except Employee shall not be obligated to indemnify or hold PATRIOT harmless against any claim or liability which arises out of PATRIOT's intentional misconduct.

8.  **Notices.** All notices, consents, waivers, and other communications under this Agreement shall be in writing and shall be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), or (b) when received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses set forth beneath their signatures below (or to such other addresses as a party may designate by notice to the other parties).

9.  **Miscellaneous.** The parties acknowledge and agree that this Agreement may not be assigned or transferred by Employee and that this Agreement may be assigned or transferred by PATRIOT without consent of Employee. This Agreement shall be binding and shall inure to the benefit of the parties, and of PATRIOT's successors, assigns and affiliates. No delay or omission in the exercise of any right, power or remedy accruing to a party as a result of a breach or default by the other party hereunder, or the failure of a party to insist upon strict performance, shall impair or be construed as a waiver of any such right, power or remedy or any other rights, powers or remedies accruing at any time. This Agreement contains the entire agreement of the parties as to the subject matter herein. It may not be changed orally but only by an amendment in writing signed by the party against whom enforcement is sought. This Agreement will be governed by the laws of the State of Tennessee. If a court determines that Employee has violated any provision of this Agreement, PATRIOT shall be entitled to recover, from Employee, attorney's fees and costs associated with that action, specifically including attorneys' fees. The parties hereby submit and agree to the exclusive jurisdiction and venue of the state courts of the State of Tennessee found in Davidson County, Tennessee, for the purpose of resolving any dispute or action arising from, relating to, or resulting from this Agreement, or otherwise from the relationship of the parties, all whether arising from contract, tort, statute or otherwise, including any action that the Employee might assert against PATRIOT. Each party expressly waives any right to federal court jurisdiction in any such action, but if any court finds that either party is nonetheless entitled to federal court jurisdiction, then the parties agree that the sole and mandatory venue for any such action shall be the federal (United States) courts for the Middle District of Tennessee. The parties agree to waive any right to a trial by jury in any and all such matters, disputes or actions. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The headings of Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. The provisions of this Agreement shall survive the termination of this Agreement and the termination of the at-will employment relationship.

*[Signature page of Confidentiality, Non-Disclosure and Non-Solicitation Agreement]*

{01715976.2 }

3

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

CAMM Care, LLC:

By: _____ Title: _CHO_

Printed Name: _Megan Mullins_

EMPLOYEE:

_____

Address: _109 Travecca Ln_

City/State/Zip: _Oak Ledge TN 37830_

4

## CONFIDENTIALITY, NON-DISCLOSURE AND NON-SOLICITATION AND NON-COMPETITION AGREEMENT

THIS CONFIDENTIALIY, NON-DISCLOSURE AND NON-SOLICITATION AND NON-COMPETITION AGREEMENT (the "Agreement") is made and entered into as of the _19_ day of _September_ 2019 by and between _Lisa T Williams_("Employee") and CAMM Care, LLC., a Tennessee limited liability company doing business as Patriot Homecare ("Patriot").

### RECITALS

A.    Patriot is engaged in the in-home caregiving, home health agency business (the "Business").

B.    Employee is an at-will employee of PATRIOT and shall perform such duties as PATRIOT may designate from time to time.

### AGREEMENT

The parties, intending to be legally bound, agree as follows:

1. Payment. Employee acknowledges that Employee's at-will employment with PATRIOT is full and sufficient consideration for Employee's execution of this Agreement.

2. Employment at Will. PATRIOT employs Employee as an at-will employee to perform such duties as PATRIOT may from time to time designate. Either PATRIOT or the Employee may terminate the at-will employment relationship upon notice to the other party. As a condition of Employee's good standing and continued employment with PATRIOT, PATRIOT requires the Employee to execute this Agreement. Employee, in consideration for that at-will employment and good standing with PATRIOT, executes this Agreement for the purposes contained in this Agreement.

3. Confidentiality and Non-Disclosure. Employee acknowledges that during the course of employment, Employee will have access to and become familiar with any and all information concerning the business and affairs of PATRIOT and its clients (collectively, the "Confidential Information").

Employee acknowledges that PATRIOT's Confidential Information is a valuable asset that gives it an advantage over its competitors. Employee further acknowledges that PATRIOT has invested substantial time, effort and expense in developing its Confidential Information, and it would be unfair for Employee to misappropriate such information for Employee's own use or the use of another.

Employee hereby agrees not to disclose to any unauthorized persons or entities or use for Employee's account or for the benefit of any third party any Confidential Information, whether or not such information is embodied in writing or other physical form or is retained in the memory of Employee without PATRIOT' s written consent. In the event of Employee's termination of employment or at such other time as PATRIOT may request, Employee agrees to deliver to PATRIOT, all documents, memoranda, notes, plans, records, reports and other documentation, models, components, devices or computer software, whether embodied in a disk or in other form( and all copies of the foregoing) that contain Confidential Information and any other Confidential Information that Employee may then possess or have under Employee's control.

4. Non-Solicitation and Non-Disparagement. Employee acknowledges that by virtue of his or her employment with PATRIOT, he or she will obtain Confidential Information and an opportunity to develop personal and business relationships with PATRIOT' s clients. Employee further acknowledges that all business developed by Employee and all business opportunities that become known to Employee as a consequence of his or her employment are the property of PATRIOT and not of Employee. These covenants are made to induce PATRIOT to hire, train, retain or promote Employee and to grant Employee access to PATRIOT's Confidential



Information. Employee acknowledges the sufficiency of the consideration received for entering into these covenants and represents that complying with them will not impose an undue hardship on Employee nor prevent Employee from making a living.

Accordingly, Employee agrees that:

(a) For a period of five (5) years after the termination of Employee's employment with PATRIOT (the "TERMINATION"):

(i) Employee agrees not to, directly or indirectly, (A) induce or attempt to induce any employee or independent contractor of PATRIOT to leave that employee's employment or independent contractor status; (B) in any way interfere with the relationship between employee or independent contractor and PATRIOT; (C) employ or otherwise engage as an employee, independent contractor or otherwise any such employee or independent contractor of PATRIOT; or (D) induce or attempt to induce any client to cease doing business with PATRIOT or in any way interfere with the relationship between any such client and PATRIOT.

(ii) Employee agrees that Employee will not, directly or indirectly, solicit the business of any person or entity known to Employee to be a client of PATRIOT, whether such Employee has or had personal contact with such person or entity, with respect to the services PATRIOT provides that client.

(iv) Employee acknowledges that Patriot's business is highly competitive and subject to specialized knowledge and agrees that Employee will not within a fifty-mile radius of any Patriot office, directly or indirectly, own, operate, contract or consult with or be employed by or work in any manner for any person or entity in the business of providing personal support services or private duty care skilled nursing services.

(b) In the event of a breach by Employee of any covenant set forth in Section 4(a) of this Agreement, the term of such covenant will be extended by the period of the duration of such breach.

(c) Employee agrees that Employee will not at any time make any statements that disparage PATRIOT, or any member, shareholder, director, officer, employee or agent of PATRIOT or that damage the reputation and goodwill of PATRIOT.

5. Remedies. In the event of an actual or threatened breach by the Employee of the provisions of this Agreement, PATRIOT shall be entitled to injunctions (both preliminary and temporary) and restraining orders enforcing and restraining such breach or violation, or such threatened or intended breach or violation in addition to such other and further legal and equitable remedies as may be available to it. The parties acknowledge that money damages alone would be inadequate to compensate PATRIOT and would be an inadequate remedy for a breach by Employee of the terms of this Agreement. The rights and remedies of PATRIOT under this Agreement are cumulative and not alternative.

6. Return of Company Property. At the request of PATRIOT (or, without any request, upon termination of employment with PATRIOT for any reason), Employee will immediately deliver to PATRIOT all PATRIOT property that is then in Employee's possession, custody or control.

7. Indemnification. Employee hereby indemnifies PATRIOT and holds it harmless against any and all claims and liabilities asserted against it which arise in connection with (i) Employee's breach of this Agreement and (ii) Employee's performance of Employee's duties and responsibilities while acting in Employee's capacity as an employee of PATRIOT, except Employee shall not be obligated to indemnify or hold PATRIOT harmless against any claim or liability which arises out of PATRIOT's intentional misconduct.

8. Notices. All notices, consents, waivers, and other communications under this Agreement shall be in writing and shall be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), or (b) when received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses set forth beneath their signatures below (or to such other addresses as a party may designate by notice to the other parties).

9. Miscellaneous. The parties acknowledge and agree that this Agreement may not be assigned or transferred by Employee and that this Agreement may be assigned or transferred by PATRIOT without consent of Employee. This Agreement shall be binding and shall inure to the benefit of the parties, and of PATRIOT's successors, assigns and affiliates. No delay or omission in the exercise of any right, power or remedy accruing to a party as a result of a breach or default by the other party hereunder, or the failure of a party to insist upon strict performance, shall impair or be construed as a waiver of any such right, power or remedy or any other rights, powers or remedies accruing at any time. This Agreement contains the entire agreement of the parties as to the subject matter herein. It may not be changed orally but only by an amendment in writing signed by the party against whom enforcement is sought. This Agreement will be governed by the laws of the State of Tennessee. If a court determines that Employee has violated any provision of this Agreement, PATRIOT shall be entitled to recover, from Employee, attorney's fees and costs associated with that action, specifically including attorneys' fees. The parties hereby submit and agree to the exclusive jurisdiction and venue of the state courts of the State of Tennessee found in Davidson County, Tennessee, for the purpose of resolving any dispute or action arising from, relating to, or resulting from this Agreement, or otherwise from the relationship of the parties, all whether arising from contract, tort, statute or otherwise, including any action that the Employee might assert against PATRIOT. Each party expressly waives any right to federal court jurisdiction in any such action, but if any court finds that either party is nonetheless entitled to federal court jurisdiction, then the parties agree that the sole and mandatory venue for any such action shall be the federal (United States) courts for the Middle District of Tennessee. The parties agree to waive any right to a trial by jury in any and all such matters, disputes or actions. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The headings of Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. The provisions of this Agreement shall survive the termination of this Agreement and the termination of the at-will employment relationship.

*[Signature page of Confidentiality, Non-Disclosure and Non-Solicitation Agreement]*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

CAMM Care, LLC:

By: _Summer Jones_

Printed Name: _Summer Jones_

Title: _Administrative Assistant_

Employee:

_Lisa T. Williams_

Address: _109 Trevecca Ln._

City/State/Zip: _Oak Ridge, TN 37830_